IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

DONNA ARENSDORF,                  §
                                  §
        Plaintiff,                §
                                  §
vs.                               §   Civil Action No. H-05-2622
                                  §
JOHN W. SNOW,                     §
SECRETARY OF THE TREASURY,        §
                                  §
        Defendant.                §

<u>**MEMORANDUM OPINION**</u>

Presently pending before the court[1] is Defendant's Motion for Summary Judgment (Docket Entry No. 17) and Plaintiff's Motion to Unseal Documents (Docket Entry No. 28).  For the reasons stated below, Defendant's motion for summary judgment is **GRANTED** and Plaintiff's motion to unseal is **DENIED**.

## I.  Case Background

Plaintiff, a white female over the age of forty, worked for the Internal Revenue Service ("IRS") as a revenue officer beginning in 1985.  She brings the present action alleging employment discrimination on the basis of race, age and retaliation.

As a revenue officer, Plaintiff was primarily responsible for collecting delinquent taxpayer accounts and securing delinquent returns, within the guidelines established by the Internal Revenue

---

[1]     The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  Docket Entry No. 7.

Manual ("IRM").[2]  In 1995, she opted to participate in the
Flexiplace program, which allowed certain revenue officers who
maintained a "fully successful" job performance rating to work from
their homes on most days.[3]

From May 2002 through August 2005, Plaintiff was supervised by
Group Manager James Gibson ("Gibson"), a white male over the age of
forty.[4]  A revenue officer was required to be evaluated yearly by
his or her group manager based on criteria and procedures contained
in the "Revenue Officer Critical Job Elements," a document provided
to all revenue officers, including Plaintiff.[5]

Plaintiff's 2003 annual performance appraisal, conducted by
Gibson in July 2003, evaluated Plaintiff as "fully successful."[6] Of
the fifteen criteria judged, Plaintiff exceeded expectations on
three and met expectations on the remaining twelve.[7]  The narrative
portion of the evaluation indicated that the review was based on
twenty-one cases and was very positive in nature.  There were a few

---

[2]     Defendant's Motion for Summary Judgment, Docket Entry No. 17,
("DMSJ"), Ex. 7, Declaration of James (Al) Gibson, p. 2.

[3]     The conditions of the Flexiplace program are found at DMSJ, Ex. 9,
IRS Traditional Flexiplace Contract, pp. 2-3.

[4]     DMSJ, Ex. 7, Declaration of James (Al) Gibson, p. 1.

[5]     Id. at p. 3.  In addition, on September 18, 2003, Plaintiff, along
with others in her group, was issued a document entitled "Case Work
Expectations."  Id.

[6]     DMSJ, Ex. 8, Bargaining Unit Performance Appraisal and Recognition
Election dated July 10, 2003.

[7]     Id.

2

deficiencies noted that did not affect Plaintiff's overall satisfactory rating.[8]  Based on this rating, Plaintiff was entitled to continue in the Flexiplace program.

On November 19, 2003, Gibson shared with Plaintiff his mid-year evaluation of her performance, finding it to be below "fully successful."[9]  Gibson gave Plaintiff a failing grade in "case analysis" in seven of the eight cases he reviewed: in three cases, there was no analysis documented before the initial contact attempt; in another three cases, Plaintiff did not document a required status before the initial taxpayer contact attempt; and, in one case, Plaintiff had not identified the basic issue causing the delinquency.[10]

Gibson also found that Plaintiff failed in the category of "communication" in eight out of the eight cases evaluated because she had not documented the establishment of realistic deadlines, appropriate compliance demands or the consequences of noncompliance.[11]  Gibson found Plaintiff to have failed the "compliance" criteria in five out of eight cases when she failed to address full compliance in the initial and subsequent contacts with the taxpayer and did not determine and address the root cause of

---

[8]  Id.

[9]  DMSJ, Ex. 7, Declaration of James (Al) Gibson, p. 5.

[10]  DMSJ, Ex. 10, Memorandum for Donna Arensdorf dated November 10, 2003, p. 1.

[11]  Id.

the delinquency.[12]

Finally, Gibson graded Plaintiff as failing in the categories of "timely actions" and "planning and scheduling."  He noted that all case files examined had deficiencies in follow-up actions, and, in some cases, no action had been taken by Plaintiff.  Gibson also found that Plaintiff was not making field contacts when appropriate.[13]  Gibson informed Plaintiff that he would be reviewing more cases before preparing her annual rating, but, based on failing scores in five categories, she was currently functioning at an "unacceptable" rating, and, if her performance did not improve, he would issue an "opportunity"[14] letter at the end of the rating period.[15]

In January 2004, Gibson reviewed nine of Plaintiff's cases and forwarded to Plaintiff a letter summarizing his review on February 2, 2004.[16]  Gibson found that Plaintiff failed in the category of "taxpayer rights" when she did not protect the confidentiality of the taxpayer in three cases.[17]  Gibson rated Plaintiff as failing

---

[12]   Id. at p. 2.

[13]   Id. at p. 2.

[14]   An "opportunity" letter was so-called because it gave an employee the opportunity to improve his or her performance in a specified period of time or face termination.  The period was also known as a performance improvement period or "PIP."

[15]   DMSJ, Ex. 10, Memorandum for Donna Arensdorf dated November 10, 2003, p. 2.

[16]   DMSJ, Ex. 11, Memorandum for Donna Arensdorf dated February 2, 2004.

[17]   Id. at p. 1.

4

the "case analysis" category because, in five cases, she did not do an initial analysis of the case prior to attempting contact with the taxpayer.[18]

Gibson also found that Plaintiff failed the "compliance" category, noting deficiencies in four cases.[19] Plaintiff failed the "investigation" category by failing to conduct appropriate record searches in three cases. Gibson gave Plaintiff failing marks in "documentation," "timely actions," and "inventory management." Gibson's memorandum to Plaintiff noted his specific findings in each category.[20] Gibson found that Plaintiff met expectations in the categories of "protection of public interest," "communications," "problem solving techniques," and "planning and scheduling" and exceeded expectations in "responsive, courteous service."[21]

On June 3, 2004, Gibson sent Plaintiff a memorandum of his review of ten cases assigned to Plaintiff.[22] He found Plaintiff met expectations in the categories of "taxpayer rights," "responsive, courteous service," "communication," "compliance,"

---

[18]   Id.

[19]   Id. at pp. 1-2.

[20]   Id. at p. 2.

[21]   Id.

[22]   DMSJ, Ex. 12, Memorandum for Donna Arensdorf dated June 3, 2004.

"problem solving techniques," and "planning and scheduling."[23] Gibson rated Plaintiff as failing in "case analysis," "protection of the public interest," "investigation," "documentation," "timely actions," and "inventory management."[24]

On June 7, 2004, Plaintiff sent an e-mail to Martin Arnold ("Arnold"), an IRS territory manager and Gibson's supervisor, requesting a transfer to another group because of Gibson's negative review of her performance.[25] Arnold, an African-American male over the age of forty, denied her request by return e-mail several hours later, explaining that her reasons for seeking a transfer were not reasons for reassignment.[26] Arnold suggested that Plaintiff discuss her concerns about her reviews with Gibson.[27] Arnold called Gibson the following day to tell him of Plaintiff's request and Arnold's response.

On June 15, 2004, Gibson revised his June 3rd interim evaluation upward, raising failing marks in "protection of public interest," "investigation," "documentation," and "timely actions" to ratings of "marginal, improvement needed."[28] Plaintiff retained

---

[23]   Id. at pp. 1-2.

[24]   Id.

[25]   DMSJ, Ex. 15, E-mail to Martin Arnold dated June 7, 2004, and response.

[26]   Id.

[27]   Id.

[28]   DMSJ, Ex. 14, Memorandum for Donna Arensdorf dated June 15, 2004, pp. 1-2.

6

failing marks in "case analysis" and "inventory management."[29]

On July 14, 2004, Plaintiff filed an administrative complaint of discrimination, which alleged that she was discriminated against on the basis of her age and race when Arnold denied her request to be transferred from a hostile work environment.  In support of her complaint of disparate treatment, Plaintiff alleged that two African-American women were allowed to transfer to other groups after allegations of hostile work environments, and she was not.[30]

On July 26, 2004, Plaintiff received her 2004 annual evaluation.[31]  Plaintiff met expectations in twelve categories and failed in the areas of "case analysis," "timely actions," and "inventory management."[32]  The narrative section attached to the review discussed the ratings in more detail, explained the reasons for the failing ratings, and disclosed with explanation that even though Plaintiff received "meets expectations" in several categories, she needed to improve.[33]  Her overall rating was

---

[29]    Id.

[30]    DMSJ, Ex. 1, Individual Complaint of Discrimination with the Department of the Treasury dated July 14, 2004.  Arnold was not involved in either of those cases.  See P. Response, Ex. G, Plaintiff's Answers to Interrogatories, Interrogatory Nos. 1, 5 and 29; DMSJ, Ex. 23, Deposition of Donna Arensdorf, pp. 138-39.

[31]    DMSJ, Ex. 16, Bargaining Unit Performance Appraisal and Recognition Election.

[32]    Id.

[33]    Id. at pp. 3-5.

"unacceptable."[34]

On August 18, 2004, Gibson informed Plaintiff that, because of her unacceptable performance rating, she was no longer eligible to participate in the Flexiplace program and had to work from the IRS office rather than her home, effective August 30, 2004.[35] She was told to select a work space and to turn in her phone card.[36]

On August 31, 2004, Plaintiff met with Gibson and was given an opportunity letter placing her on a performance improvement period ("PIP") for ninety days.[37] As part of the PIP, she was provided an on-the-job instructor to assist her with any technical questions. The PIP required her to meet every other week with Gibson to discuss and review her progress.[38] At the conclusion of the meeting, Plaintiff handed Gibson a note from her physician dated August 25, 2004, that stated that Plaintiff would be unable to work from September 1, 2004, to October 1, 2004, due to an unnamed medical condition.[39] Gibson, in a memo dated August 31, 2004, approved sick leave for the requested period of time.[40] He

---

[34]   Id. at p. 1.

[35]   DMSJ, Ex. 18, Memorandum for Donna J. Arensdorf.

[36]   Id.

[37]   DMSJ, Ex. 20, Letter to Donna Arensdorf dated August 31, 2004. See also Ex. 7, Declaration of James Gibson, pp. 6-7.

[38]   Id.

[39]   DMSJ, Ex. 21, Doctor's note.

[40]   DMSJ, Ex. 29, E-mail to Donna Arensdorf dated August 31, 2004.

8

instructed Plaintiff to meet him in his office at 9:00 a.m. on October 4, 2004.

On September 24, 2004, Plaintiff filed a second complaint of discrimination, alleging that she was discriminated against on the basis of her age and in retaliation for her earlier complaint of discrimination when Gibson gave the negative yearly performance appraisal, removed her from the Flexiplace program and placed her on the PIP. She also claimed that she was subjected to a hostile work environment by Gibson and Arnold.[41]

Plaintiff did not return to work after taking sick leave for the month of September 2004. Instead, she submitted a letter from a therapist at Behavioral Services of Houston, PA, dated September 28, 2004, notifying the IRS that Plaintiff would "need to be out of the office due to health reasons that prevent her from performing her work responsibilities from October thru November 2004."[42] The health reasons that prevented Plaintiff from working were not disclosed.[43]

By certified letter and e-mail dated October 5, 2004, Gibson informed Plaintiff that the September 28, 2004, memo from the therapist was insufficient to establish that Plaintiff was

---

[41]     DMSJ, Ex. 2, Complaint of Discrimination dated September 24, 2004.

[42]     DMSJ, Ex. 30, Memo dated September 28, 2004; P. Response, Ex. 15, Evidentiary Hearing, p. 81.

[43]     At her deposition, Plaintiff revealed that she was attending weekly talk therapy sessions and that she was "too depressed to work." DMSJ, Ex. 23, Deposition of Donna Arensdorf, pp. 102-105.

incapacitated from working for an additional two months.[44]  Gibson gave Plaintiff one week to either submit a doctor's certificate supporting her claim that she was incapacitated from working and specifying the expected duration of the incapacitation or return to work on October 13, 2004.[45]  Gibson warned Plaintiff that she would be placed on Absence Without Leave ("AWOL") status if she failed to return to work on that date, and her previously-approved sick leave would be converted to AWOL status with disciplinary consequences.[46]

On  October  11,  2004,  Plaintiff  submitted  a  disability certificate, signed by a doctor, that stated that she was not able to work and would be reevaluated on October 29, 2004.[47]  Plaintiff also submitted a note from a doctor at another clinic that reported that she was incapacitated until November 30, 2004.[48]  Plaintiff remained on sick leave through November 30, 2004.[49]

On November 12, 2004, Plaintiff's complaints of discrimination were supplemented and consolidated into a complaint of a hostile work environment on the bases of age, race and retaliation, based

---

[44]    DMSJ, Ex. 31, Letter to Donna Arensdorf; Ex. 32, E-mail to Donna Arensdorf.

[45]    Id.

[46]    Id.

[47]    DMSJ, Ex. 33, Disability Certificate.

[48]    DMSJ, Ex. 22, Prescription form signed by Dr. Rzasnicki.

[49]    DMSJ, Ex. 34, Time and Attendance Reports for D. Arensdorf.

10

on actions occurring between June 2004 and August 2004.[50]   The
specific allegations of harassment to be investigated were
enumerated in a letter to Plaintiff from the Department of the
Treasury's Equal Employment Opportunity ("EEO") Field Services
office.[51]

This matter was investigated and a hearing was held before an
Equal Employment Opportunity Commission administrative law judge.
After the hearing, but before the administrative law judge rendered
a decision, Plaintiff filed a motion to dismiss her complaint in
order to file the present action in this court.[52]

On July 29, 2005, Plaintiff filed the instant suit,
complaining of a hostile work environment on the basis of her age,
race and prior EEO activity.   She also complained generally that
her supervisors "singled her out for disparate treatment."[53]

On April 28, 2006, Defendant filed the pending motion for
summary judgment on all of Plaintiff's claims.

---

[50]   DMSJ, Ex. 3, Letter to Donna Arensdorf, dated November 12, 2004.

[51]   Id.   The allegations to be investigated were: (1) In June 2004,
Plaintiff's's manager screamed at her; (2) On June 7, 2004, Plaintiff received
a job review failing in five elements; (3) On June 7, 2004, Plaintiff's request
for reassignment to another group was denied; (4) On July 31, 2004, Plaintiff
received a failing rating on her annual performance appraisal; (5) On August 30,
2004, Plaintiff was removed from the Flexiplace program; (6) On August 30, 2004,
Plaintiff's phone card was removed; (7) On August 31, 2004, Plaintiff received
a 90-day opportunity to improve letter; (8) Plaintiff was not afforded an on-the-
job coach; and (9) Plaintiff's manager tried to change Plaintiff's sick leave to
AWOL.

[52]   DMSJ, Ex. 5, Order of Dismissal.

[53]   Plaintiff's Original Complaint, Docket Entry No. 1, p. 3.

## II.  Motion to Unseal Documents

One week after filing her response to Defendant's Motion for Summary Judgment, Plaintiff filed a Motion to Unseal Documents (Docket Entry No. 28).  In that motion, Plaintiff seeks to unseal documents placed under a February 11, 2004, protective order in <u>Vera Robinson v. John Snow, Secretary of the Treasury</u>, Civil Action No. H-03-859, (S.D. Tex.).  In support of this motion, Plaintiff merely states, "Said documents and exhibits are relevant to Plaintiff and to this case."

A review of the court's memorandum opinion filed in the <u>Robinson</u> action does not reveal any relationship to the present suit, other than both Plaintiff and Robinson were employed by the Internal Revenue Service.[54]  There, Robinson, proceeding pro se, raised allegations of discrimination which allegedly occurred in 1998.  The court found that it could not reach the merits of Robinson's discrimination complaints because they were not timely filed with her employer.

Plaintiff has not met her burden of showing that any document produced in the <u>Robinson</u> lawsuit would be relevant to the present dispute.  Plaintiff's motion to unseal is **DENIED.**

## III.  Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that

---

[54]    See <u>Robinson v. Snow</u>, H-03-859, Memorandum Opinion, Docket Entry No. 51.

12

no genuine dispute exists regarding any material fact and the
moving party is entitled to judgment as a matter of law.  Fed. R.
Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986);
Brown v. City of Houston, 337 F.3d 539, 540-41 (5th Cir. 2003).  The
movant must inform the court of the basis for the summary judgment
motion and must point to relevant excerpts from pleadings,
depositions, answers to interrogatories, admissions, or affidavits
that demonstrate the absence of genuine factual issues.  Celotex
Corp., 477 U.S. at 323; Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th
Cir. 1992).

     If the moving party can show an absence of record evidence in
support of one or more elements of the case for which the nonmoving
party bears the burden, the movant will be entitled to summary
judgment.  Celotex Corp., 477 U.S. at 322.  In response to a
showing of lack of evidence, the party opposing summary judgment
must go beyond the pleadings and proffer evidence which establishes
each of the challenged elements of the case, demonstrating that
genuine issues of material fact do exist which must be resolved at
trial.  Id. at 324.

     The nonmoving party must show more than "some metaphysical
doubt as to the material facts."  Meinecke v. H & R Block of
Houston, 66 F.3d 77, 81 (5th Cir. 1995).  Conclusory allegations,
unsubstantiated assertions, improbable inferences, unsupported
speculation, or only a scintilla of evidence will not carry this

                                13

burden.  Brown, 337 F.3d at 541; Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir. 2002); see also Lawrence v. Univ. of Tex. Med. Branch at Galveston, 163 F.3d 309, 312, 313 (5th Cir. 1999)(holding that subjective personal beliefs or conjecture about discriminatory intent will not defeat summary judgment in a Title VII case).

## IV.  Analysis

Federal employees are protected from discriminatory personnel actions based on "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16(a).  Disparate treatment claims require proof of intentional discrimination.  Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 986 (5th Cir. 1988).  In the absence of direct evidence of discrimination, Title VII claims are analyzed under the familiar burden-shifting approach originally articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and recently modified in Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003), and Rachid v. Jack In The Box, Inc., 376 F.3d 305 (5th Cir. 2004).

The Age Discrimination in Employment Act ("ADEA") provides, in relevant part, that:

It shall be unlawful for an employer-

(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age.

29 U.S.C. § 623(a).  Claims under the ADEA are analyzed under the Title VII burden-shifting framework.  See Meinecke, 66 F.3d at 83.

14

1.  Exhausted v. Non-Exhausted Claims

The court notes at the outset that it only has jurisdiction to consider discrimination claims where a plaintiff has exhausted administrative remedies.  Randel v. U. S. Dep't of Navy, 157 F.3d 392, 395 (5th Cir. 1998)(citing Brown v. Gen. Servs. Admin., 425 U.S. 820, 832 (1976)); Fitzgerald v. Sec'y, U.S. Dep't of Veterans Affairs, 121 F.3d 203, 206 (5th Cir. 1997).

In the present case, Plaintiff has exhausted her administrative remedies on a race/age/reprisal-based hostile work environment claim and a retaliation claim, stemming from events which occurred between June and October 2004.  She also claimed that she was discriminated against when (1) her manager screamed at her in June 2004, (2) she received a negative job review in June 2004, (3) her transfer request was denied, (4) she received an "unacceptable" rating on her July 2004 annual review, (5) she was removed from the Flexiplace program, (6) she was asked to return her phone card, (7) she was placed on a PIP, (8) she was not afforded a job coach when she received her first negative review in November 2003, and (9) Gibson threatened to change her sick leave to AWOL.[55]  Because it is unclear if Plaintiff cites the above actions as supporting her claim of a hostile work environment and also as separate acts of discrimination, the court considers that Plaintiff has exhausted her administrative remedies with respect to

---

[55]     DMSJ, Ex. 3, Letter to Donna Arensdorf dated November 12, 2004.

both theories of discrimination.

Defendant argues that Plaintiff did not raise a disparate impact claim in her administrative complaint of discrimination, and, accordingly, the court lacks jurisdiction over that theory of recovery.  The court agrees, noting that Plaintiff's brief failed to provide any facts to support such a theory.[56]  Defendant further argues that the court cannot consider subsequent employment actions such as a July 2005 reassignment of duties or an August 2005 termination as part of this lawsuit because those events were not included in the administrative investigation of her June and September 2004 complaints of discrimination.[57]  Again, the court agrees that those actions were not part of the administrative investigation and lacks jurisdiction over those non-exhausted claims.

2.  <u>Disparate Treatment on the Basis of Race or Age</u>

In the context of a disparate treatment adverse employment action claim, a plaintiff must show that (1) she was a member of a protected class; (2) plaintiff was qualified for the position; (3) plaintiff suffered an adverse employment action; and (4) she was

---

[56]     <u>See</u> P.Response, Ex. 15, "Evidentiary Hearing," p. 5.  At a minimum, Plaintiff's administrative complaint would have had to identify a facially neutral policy which had a disproportionately adverse effect on a protected class.  <u>Hebert v. Monsanto</u>, 682 F.2d 1111, 1116 (5th Cir. 1982).  Plaintiff's administrative complaint failed to do so.

[57]     In fact, the ALJ denied Plaintiff's motion to amend her administrative complaint to include her termination as another instance of harassment. P. Response, pp. 15-16.

16

treated less favorably than similarly situated employees of a different race.  See Okoye v. Univ. of Tex. Houston Health Sci. Ctr., 245 F.3d 507, 512-13 (5th Cir. 2001).  A plaintiff may trigger a presumption of discrimination by establishing all of the elements of a prima facie case.  Price v. Fed. Express Corp., 283 F.3d 715, 720 (5th Cir. 2002).  The burden then shifts to the defendant to proffer legitimate, nondiscriminatory reasons for the employment action.  Id.

If the defendant meets this burden of production, the presumption dissolves and the burden shifts back to the plaintiff. Id.; see also Sandstad v. CB Richard Ellis, Inc., 309 F.3d 893, 897-98 (5th Cir. 2002)(emphasizing the defendant's burden is one of production, not persuasion).  According to the Fifth Circuit's recent modification of the analysis, the plaintiff's burden then is to produce some evidence suggesting "either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic (mixed-motives alternative)." Rachid, 376 F.3d at 312 (citations, internal quotation marks, and internal alterations omitted).  If the plaintiff shows illegal discrimination was a motivating factor, the defendant must respond with evidence that the same decision would have been made regardless of discriminatory

animus.  Id.

The key to the factual assessment at the pretext stage is whether the employer discriminated against the plaintiff on the basis of race or age.  Pratt v. City of Houston, 247 F.3d 601, 606 (5th Cir. 2001).  An employee's subjective belief that she has been the victim of discrimination is insufficient to create an inference of discriminatory intent.  Lawrence, 163 F.3d at 313.  The court will grant judgment in favor of the employer if the evidence, taken as a whole, would not allow a jury to infer that the reason for the adverse employment action, at least in part, was discriminatory.  See Bennett v. Total Minatome Corp., 138 F.3d 1053, 1060 (5th Cir. 1998).

The Fifth Circuit has narrowly construed the adverse employment element of a plaintiff's prima facie case of intentional discrimination, stating that an employment action that "does not affect job duties, compensation, or benefits," is not an adverse employment action.  Pegram v. Honeywell, Inc., 361 F.3d 272, 282 (5th Cir. 2004)(quotation marks and internal citations omitted).  An adverse employment action consists of "ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating."  Felton v. Polles, 315 F.3d 470, 486 (5th Cir. 2002)(quotation marks and internal citations omitted).  "An employer's action does not rise to the level of an 'adverse employment action' when it fails to have more than a mere

tangential effect on a possible future ultimate employment decision." <u>Mota v. Univ. of Tex. Houston Health Sci. Ctr.</u>, 261 F.3d 512, 519 (5th Cir. 2001)(quotation marks and internal citations omitted).  <u>See also</u> <u>Hernandez v. Crawford Bldg. Material Co.</u>, 321 F.3d 528, 531-32 & n.2 (5th Cir. 2003)(listing actions that are and are not considered ultimate employment actions).  The adversity of the employment action is judged on an objective standard.  <u>Pegram</u>, 361 F.3d at 283.

Applying these standards, Plaintiff's complaints that her manager gave her poor performance evaluations in November 2003, February 2004, June 2004 and July 2004, screamed at her in June 2004, placed her on a PIP, removed her from the Flexiplace program, failed to provide her a job coach in November 2003, and sought the return of her government phone card are not ultimate employment actions because of their lack of consequence to a decision to hire, grant leave, discharge, promote or compensate Plaintiff.

Plaintiff's complaint that Gibson threatened to change her sick leave to leave without pay unless adequate documentation was provided is not an adverse employment action because Gibson took no action that denied Plaintiff any leave to which she was entitled.[58] Merely advising an employee of the adverse consequences of failing to support a lengthy sick leave request with a doctor's note is not an adverse employment action.

---

[58]    DMSJ, Ex. 23, Deposition of Donna Arensdorf, p. 78.

19

The Fifth Circuit has held that an involuntary job transfer may qualify as an adverse employment action if the transfer makes the job "objectively worse." Hunt v. Rapides Healthcare Sys., LLC, 277 F.3d 757, 770 (5th Cir 2001). A plaintiff's subjective preference is irrelevant in this analysis. Burger v. Cent. Apartment Mgmt., Inc., 168 F.3d 875, 879 (5th Cir. 1999). In Burger, the plaintiff, a maintenance supervisor at an apartment complex, sought a transfer to the same position at another apartment complex that was closer to his home and offered more job stability. Burger, 168 F.3d at 787. Other than these two differences, the two jobs were the same in day to day duties, wages, and other benefits. The Fifth Circuit rejected these differences as raising a fact issue of a materially adverse employment action. In doing so, the court found that the potential for additional job security at the requested job did not transform the denial of a purely lateral transfer request into an adverse, ultimate employment decision. Burger, 168 F.3d at 880. "Otherwise, every trivial personnel action that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit." Id.

In the present case Plaintiff's request to transfer to another group was initiated after Gibson gave her failing grades on a recent performance evaluation, a reason the court characterizes as a subjective preference of Plaintiff rather than evidencing a

material difference in the jobs.[59]  Plaintiff fails to allege any differences in the positions, type of work to be performed or wages paid.  Arnold's decision denying Plaintiff's request to transfer to another group did not affect Plaintiff's compensation, duties or benefits and did not make her job "objectively worse."

In light of the foregoing, the court concludes that Plaintiff has not raised a fact issue that she suffered an adverse employment action under Title VII and her disparate treatment claims on the basis of race and age must fail.[60]

3.   Race and Age-based Hostile Work Environment

a.   Continuing Violation

As a federal employee, Plaintiff was required to complain about unlawful discrimination within forty-five days of the alleged discriminatory event.   29 C.F.R. § 1614.105(a)(1)("an aggrieved

---

[59]    DMSJ, Ex. 15, E-mail to Arnold and response.  Plaintiff stated:

I am requesting that I be re-assigned to Luisa's group effective immediately due to the following reasons:
* I just recently received another review on 10 cases (I received a rating of "Fails" in 5 aspects)
* Mr. Gibson, GM told me 2 months ago after my last appraisal dated 07/2003, that my next appraisal dated 7/2004 would not be rated as acceptable.  Can he see into the future?  Or is he on a mission?
* Mr. Gibson never addresses my rebuttals.

[60]    Because the court makes this finding, it does not discuss the other deficiency in Plaintiff's prima facie case, that is, the lack of a comparably situated person.  Although Plaintiff claims that two African-American women were transferred after allegations of harassment, while she was not, Plaintiff admitted that Arnold was not involved in either case.  She also admitted that she was unaware of any non-white employee for whom Arnold had granted a transfer request.  P. Response, Ex. 15, Evidentiary Hearing, pp. 197-98.  In addition, the court notes that Arnold averred that he granted a transfer request made by Plaintiff several years earlier because she had a "fully successful" performance rating at the time of her request.  He stated that the IRS does not typically transfer an employee to another group if that employee is performing below "fully successful."  DMSJ, Ex. 25, Declaration of Arnold, p. 3.

person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory"). Although Plaintiff's administrative complaints mentioned only events occurring in June and July 2004, Plaintiff cites to her deposition and hearing testimony and the testimony of others to support a theory that she has endured a hostile work environment at the IRS for the past sixteen years.[61]

In National Railroad Passenger Corp. v. Morgan, 536 U.S. 101 (2002), the United States Supreme Court clarified when a continuing violation theory could extend the statute of limitations in a Title VII action.  There, the Court found that a plaintiff raising claims of discrete acts of discrimination or retaliation must file an administrative complaint of discrimination within the applicable limitation period, but permitted, in a hostile work environment claim, recovery for all acts which were part of the same unlawful employment practice and where at least one act fell within the limitations period.  Morgan, 536 U.S. at 122.

Applying Morgan, the Fifth Circuit held that a plaintiff may complain of otherwise time-barred discriminatory acts if it can be shown that the discrimination within the limitations period and the harassment outside the limitations period constituted "a series of related acts, one or more of which falls within the limitation period."  Pegram, 361 F.3d at 279; Felton, 315 F.3d at 487.

---

[61]    P. Response, Ex. 15, Evidentiary Hearing, p. 32.

In order to determine if Plaintiff may extend the limitations period under a continuing violation theory, the court must consider the time-barred events with a mind to determine if they involve the same type of discrimination, if they were isolated occurrences or related to the timely-filed charges and whether the acts had the degree of permanence that would have alerted Plaintiff to assert her rights at the time they occurred. Huckabay v. Moore, 142 F.3d 233, 239 (5th Cir. 1998).

In her affidavit,[62] Plaintiff complains that in 1988, her manager, Steve Weakley ("Weakley"), transferred her case files to a new revenue officer in order to deprive Plaintiff of credit for her work on the cases. She also complained that in October 1988, unnamed IRS managers reported to the IRS Inspector General that she had stolen government property. Plaintiff also complained that Weakley counseled Plaintiff about her improper handling of a suicide threat in 1988. In 1989, Weakley reassigned her higher graded cases to a higher grade revenue officer. Later that year, Plaintiff filed a union grievance after she was passed over for a promotion to a GS 11 grade.[63]

In 1989, Plaintiff and several co-workers were investigated

---

[62]     Affidavit of Donna Arensdorf in Opposition to Defendant's Motion for Summary Judgment, Docket Entry No. 26.

[63]     In 1991, Plaintiff was promoted to the GS 11 grade as a result of the grievance process.

for allegedly starting a fire in the branch chief's office.[64]   In 1990, Plaintiff's manager, Sue Stepp, counseled Plaintiff about talking to union stewards without a leave slip and reviewed Plaintiff's files while Plaintiff was at lunch.   Plaintiff also complains that on July 30, 1990, during a counseling session with Plaintiff, Stepp became hysterical and threw Plaintiff out of her office.

Plaintiff complained that, in 1991, her manager, Ron Hopper ("Hopper"), insisted that Plaintiff explain the reason for her sick leave before he would grant it.   Plaintiff alleged that Hopper spoke to her in a derogatory manner on June 20, 1992.

Plaintiff stated that on December 7, 1992, her manager, Maurice Cournoyer ("Cournoyer"), instructed her to withdraw her application for a promotion to the Las Vegas office.   Plaintiff claimed that Cournoyer re-evaluated her performance appraisal to make it unacceptable for promotion.   Plaintiff alleged that on September 30, 1994, Cournoyer's wife reported for duty in an intoxicated state.   Plaintiff complains that only she was reprimanded for gossiping about the incident.

In 1997, Plaintiff's group manager, Tom Carson, counseled Plaintiff about her case closures.   From 1997 to May 7, 2002, Plaintiff returned to work for Cournoyer.   Plaintiff complained

---

[64]   That investigation was closed in 1993 without charges being filed against Plaintiff.

that he "mainly insulted me and refused to sign off on any cases I submitted for closure."[65]

At her deposition, Plaintiff also complained that in the early 1990's, a branch chief who is now retired, Charles Speer, told Plaintiff that she would never be promoted to a GS 12 or have an appraisal score of over 3.[66]   Plaintiff speculated that her subsequent supervisors, including Gibson, were carrying out Speer's threat.[67]  She conceded that she had nothing more than conjecture to support her theory.[68]  Plaintiff also speculated that Gibson and Cournoyer were friends and that Gibson's present actions were in retaliation for her filing an EEO complaint against Cournoyer in 1997.[69]  She conceded that she had no personal knowledge that Gibson was aware of that earlier EEO complaint.[70]

The court rejects Plaintiff's contention that she has established a continuing violation of a hostile work environment back to 1988.   The acts of which she complains occurred in different offices, with different managers with the only connection being Plaintiff's admitted speculation that her present supervisor

---

[65]    Id. at p. 5

[66]    DMSJ, Ex. 23, Deposition of Donna Arensdorf, pp. 131-32.

[67]    Id. at pp. 133-136.

[68]    Id. at p. 136.

[69]    P. Response, Ex. 15, Evidentiary Hearing, pp. 109-111.

[70]    P. Response, Ex. 15, Evidentiary Hearing, p. 111.

is carrying out a scheme to harass her orchestrated by several retired IRS managers.[71]   The mere fact that Plaintiff has had performance issues for sixteen years is simply not enough to permit a continuing violation on that basis.   In light of the foregoing, the court will only consider those actions of Gibson dating from May 2002 through March 2005, that are contained in the summary judgment evidence, in determining whether Plaintiff has raised a fact issue of a hostile work environment.

   b.   <u>Hostile Work Environment</u>

   To establish a prima facie case of a hostile work environment based on a protected characteristic, a plaintiff must show: (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based upon the protected characteristic; (4) the harassment affected a term, condition, or privilege of employment; and (5) her employer knew or should have known of the harassment and failed to take prompt remedial action. <u>Frank v. Xerox Corp.</u>, 347 F.3d 130, 138 (5th Cir. 2003); <u>Celestine</u>

---

[71]   The court has read the affidavits and testimony of Plaintiff's witnesses which discuss her lengthy history of filing union grievances against her supervisors and disciplinary actions taken against Plaintiff, as well as their speculations about the existence of a management vendetta against Plaintiff over the past sixteen years.   The court has examined this summary judgment evidence to determine if it raises a fact issue that there is a continuing violation of a hostile work environment and concludes it does not.   Most of the testimony is inadmissible and irrelevant, either because the witnesses are relating events told to them by Plaintiff or the testimony involves other groups and other supervisors from many years ago.   The only "evidence" which connects these past events to Plaintiff's present complaints are the witnesses' speculations that Plaintiff's former managers are influencing her current manager to continue the harassment.   The court may consider only admissible evidence in ruling on the present motion. <u>See</u> Fed. R. Civ. P. 56(e).   Conjecture is not admissible evidence.

v. Petroleos de Venezuella SA, 266 F.3d 343, 353 (5th Cir. 2001).

When the harassment in question was allegedly committed by a supervisor with immediate or successively higher authority over the plaintiff, the fifth element need not be established. Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 765 (1998); Faragher v. City of Boca Raton, 524 U.S. 775, 807 (1998); Celestine, 266 F.3d at 353. In this instance, if the plaintiff meets the first four elements, the employer is subject to vicarious liability for the supervisor's harassing conduct. Ellerth, 524 U.S. at 765; Faragher, 524 U.S. at 807.

As the Fifth Circuit has noted, Title VII does not establish a civility code in the workplace; an employer runs afoul of Title VII when a work environment becomes hostile or abusive because of a plaintiff's age, race or prior complaint of discrimination and when the harassment is sufficiently severe or pervasive to alter the conditions of employment. Indest v. Freeman Decorating, Inc., 164 F.3d 258, 263 (5th Cir. 1999)(Title VII not a civility code). The Supreme Court has warned that evidence of a hostile work environment should not be examined too narrowly, rather, "[T]he objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81-82 (1998)(quotation marks and internal citation omitted).

27

In support of its motion for summary judgment, Defendant argues that Plaintiff is unable to prove the second, third, and fourth elements of a prima facie case.  The court agrees.

First, an employer has the right to set performance standards for its employees and expect conformance therewith.  <u>Deines v. Tex. Dept. of Protective & Regulatory Servs.</u>, 164 F.3d 277, 281 (5th Cir. 1999)(explaining that courts do not try the validity of an employer's good faith belief as to one employee's competence over another's and that discrimination laws do not allow for judicial second guessing of business decisions).  The court rejects Plaintiff's premise that work-related performance issues can constitute actionable harassment simply because she considers them as such or disagrees with her supervisor's interpretation of the IRS performance standards.  Gibson's actions in evaluating Plaintiff's performance, counseling her on performance deficiencies, and placing her on a PIP are not harassment, rather, they are personnel decisions related to Plaintiff's job performance.  Plaintiff has failed to allege any action taken by Gibson which the court considers to be non-performance related.  Likewise, Plaintiff's request to Arnold for a transfer to another group and his response were conducted via e-mail and did not involve any unpleasant personal encounters or remarks.  Plaintiff fails to prove the second element of her prima facie case.

Second, Plaintiff has failed to allege any fact which would

support her argument that Gibson's or Arnold's actions were based on her age or race.  Gibson and Plaintiff are both Caucasians and both over the age of forty.  Arnold is African-American and over the age of forty.  Plaintiff puts forward no race-based evidence other than she and Arnold are of different races.  The only age-related evidence Plaintiff posits in support of the third prong of her prima facie case is that (1) Gibson was aware of her age because the group celebrated birthdays,[72] (2) she informed the group of her age several times,[73] and (3) every performance appraisal since her fortieth birthday sixteen years earlier has been "discriminatory."[74]  This evidence fails to raise a presumption of discrimination on the basis of age.

Third, in order to establish the fourth prong of a prima facie case of hostile work environment, Plaintiff must produce evidence that the harassment affected a "term, condition, or privilege" of employment, showing that the discriminatory words or conduct were "'sufficiently severe or pervasive, so as to alter the conditions of employment and create an abusive working environment.'" Celestine, 266 F.3d at 353 (quoting Watts v. Kroger, 170 F.3d 505, 509-10 (5th Cir. 1999)).  In addition, the plaintiff must demonstrate that her work environment was both subjectively and

---

[72]     Plaintiff's Original Complaint, Docket Entry No. 1, Plaintiff's affidavit attached thereto as unnumbered exhibit, p. 2.

[73]     Id.

[74]     DMSJ, Ex. 23, Deposition of Donna Arensdorf, p. 14.

objectively offensive.  In other words, Plaintiff must subjectively perceive the harassment as sufficiently severe or pervasive, and this subjective perception must be objectively reasonable.  <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 21-22 (1993).

In considering whether Plaintiff's perceptions of harassment were objectively reasonable, the court first notes that the summary judgment evidence established that Plaintiff worked from her home and was only in the office in the presence of her supervisor approximately one day per week.[75]  The performance evaluations of which she complains occurred in November 2003, February 2004, June 2004 and July 2004 and each involved a "ride-along" with Gibson, his review of a number of her case files without her presence and a personal meeting afterwards to review the written evaluation. The evaluation was based solely on Plaintiff's work product and did not touch on personal, non-job related topics.  The limited contact Plaintiff had with Gibson on a weekly basis and the sporadic nature of the "harassing" performance evaluations do not raise a fact issue of being "severe" or "pervasive" in nature.

Further, there is no evidence that Plaintiff was physically threatened or publicly humiliated by Arnold or Gibson with respect to her job evaluations or the denial of her request for transfer to another group.  Notably, Plaintiff also fails to explain how the performance evaluations or the transfer denial unreasonably

---

[75]     P. Response, Ex. 15, Evidentiary Hearing, p. 67.

interfered with her work performance.  Indeed, the job evaluations were an important, and required, part of the job itself.

It is also undisputed that Plaintiff's score on her July 2004 yearly evaluation required that she be placed on a PIP for three months.[76] Once Plaintiff was removed from the Flexiplace program, she no longer needed a phone card to make long distance calls to taxpayers at government expense.  She was also asked to return the government printer that she had at her home.[77]  These actions are not objectively abusive.

Plaintiff's complaint that Gibson "threatened" her with AWOL status if she could not support her two month sick leave request with a doctor's certificate does not raise a fact issue that Plaintiff was subjected to an objectively abusive work environment. Most employees would expect to document such a lengthy job absence with a note from a doctor if they wished to maintain their employment.

Plaintiff complains that Gibson's supervisor, Arnold, created a hostile work environment by signing off on Gibson's reviews of Plaintiff's performance, ignoring her February 2004 complaints of a hostile work environment after Gibson had given her a negative

---

[76]     In her deposition, Plaintiff conceded that if an employee does not have a "fully successful" performance rating, he or she cannot participate in the Flexiplace program, pursuant to the collective bargaining agreement with the IRS. DMSJ, Ex. 23, Deposition of Donna Arensdorf, p. 28.

[77]     P. Response, Ex. 15, Evidentiary Hearing, pp. 115-16.

performance review, and denying her transfer request in June 2004.[78]
These acts do not objectively evidence a hostile work environment
because they are not abusive, severe or pervasive.

Finally, the court addresses Plaintiff's complaints about her
personal interactions with Gibson.   In her administrative
complaint, Plaintiff only mentioned a June 2004 "screaming"
incident which triggered her request for a transfer.   Plaintiff
attempted to describe the incident at her deposition.[79]  She stated
that she could not remember the language Gibson used, but it was
not derogatory and was not loud enough for anybody in the next
group to hear.[80]

Plaintiff also described a May 2002 incident when she asked
Gibson for more cases.  According to Plaintiff, he screamed at her
to assign the cases to herself.[81]  Other instances of Gibson's
objectionable behavior were (1) an incident where she was late for
a meeting and Gibson came up in back of her and said loudly, "It's
time," startling her;[82] (2) an incident in a staff meeting where he
observed Plaintiff talking to a co-worker and asked, "Donna, do you

---

[78]     P. Response, Ex. 15, Evidentiary Hearing, p. 137.

[79]     DMSJ, Ex. 23, Deposition of Donna Arensdorf, pp. 32, 82-83.

[80]     Id. at pp. 82-83.   Plaintiff stated, "Well, he wouldn't do it loud
enough for anybody in the next group to hear it; but I think the most thing that
gets you with Mr. Gibson is when he's angry, his eyes." Id. at p. 82.  By her
own admission, this group was less than twenty feet away.  Id. at p. 83.

[81]     Id. at p. 85.

[82]     Id. at p. 33.

want to share the rest of this with the group?"[83] (3) a May 2002 conversation in which Gibson asked Plaintiff her age, where she went to school, and where she was from;[84] (4) an incident where, responding to Plaintiff's objection to additional training, stated, "Well, on some people, we have to do that;"[85] and, (5) an occasion on which Gibson refused to ride in the same elevator with Plaintiff.[86]

During the PIP, Plaintiff complains that Gibson sent her e-mails requesting that she bring to him certain files for review, that he demanded to see the files right away, and that she was to make sure all her case files remained at the office.[87] She also claimed, without providing any detail, that he insulted her and "threw her out of his office."[88]  The court finds that the use of e-mails is not objectively abusive and there is no information from which the court can evaluate the alleged insult and Plaintiff's ejection from Gibson's office during the PIP period.

Considering all the circumstances, Plaintiff has failed to allege sufficient facts from which a reasonable juror could

---

[83]     Id. at p. 35.

[84]     Id. at p. 87.

[85]     Id. at p. 85. At the administrative hearing, Plaintiff reported that this statement was made after she returned to work in March 2005.   See P. Response,  Ex. 15, Evidentiary Hearing, p. 101.

[86]     P. Response, Ex. 15, Evidentiary Hearing, p. 131.

[87]     P. Response, Ex. 15, Evidentiary Hearing, p. 141-42.

[88]     P. Response, Ex. 15, Evidentiary Hearing, p. 141.

conclude that Plaintiff's work environment was objectively hostile and that the abusive acts were "sufficiently severe or pervasive, so as to alter the conditions of employment and create an abusive working environment" as required by the Fifth Circuit in Celestine, 266 F.3d at 353.

     3.  Retaliation

     Plaintiff's retaliation claim is subject to a similar burden-shifting construct as her other Title VII claims.  See Septimus v. Univ. of Houston, 399 F.3d 601, 608 (5th Cir. 2005).  To establish a prima facie case of retaliation, a plaintiff must show that (1) she engaged in a protected activity; (2) an adverse employment action occurred; and (3) that a causal link existed between the protected activity and the adverse action.  Gee v. Principi, 289 F.3d 342, 345 (5th Cir. 2002).  Once an employee has set out a prima facie case, the burden shifts to the employer to state a legitimate, non-retaliatory reason for its action.  Id.  If the employer can provide such a reason, the burden shifts back to the employee to show that the stated reason is actually a pretext for retaliation.  Id.

     Turning to the first prong, the court has no difficulty in finding that Plaintiff engaged in a protected activity when she filed an informal complaint of discrimination on June 7, 2004.  See Douglas v. DYNMcDermott Petroleum Operations Co., 144 F.3d 364, 372-73 (5th Cir. 1998).  The court considers Plaintiff's 1995 and

34

1997 complaints of discrimination too remote in time to satisfy this prong of the prima facie case.[89]

The Supreme Court recently clarified the second prong of the prima facie case of retaliation in <u>Burlington Northern & Santa Fe Railway v. White</u>, ___ U.S. ___, 126 S.Ct. 2405 (2006). There, the court held that, for purposes of a retaliation cause of action, the adverse employment action requirement is not limited to hiring, granting leave, discharging, promoting or compensating, but may encompass any challenged action that a reasonable employee may consider materially adverse, "which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." <u>White</u>, 126 S.Ct. at 2415 (quotation marks and internal citation omitted)). The Court noted that "normally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence." <u>White</u>, 126 S.Ct. at 2415.

In the present case, Plaintiff claims that after she filed her June 2004 complaint of discrimination, she received a poor annual performance evaluation in July 2004, was placed on a PIP in August 2004, and was no longer allowed to participate in the Flexiplace program. The court finds that these actions might well dissuade a

---

[89]    In fact, Plaintiff admitted that her 1995 complaint was an anonymous phone call. P. Response, Ex. 15, Evidentiary Hearing, p. 185. Plaintiff's 1997 complaint concerned her then supervisor, Cournoyer. DMSJ, Ex. 23, Deposition of Donna Arensdorf, p. 43. Gibson testified that he was personally unaware of this complaint. P. Response, Ex. 15, Evidentiary Hearing, p. 251.

reasonable employee from making or supporting a charge of discrimination. On the other hand, Plaintiff's complaint that Gibson threatened to convert her sick leave to leave without pay unless she provided documentation of her medical condition does not rise to the level of an adverse employment action under <u>White</u> because a reasonable employee would not find such a request to be objectively unreasonable or retaliatory.[90]

To satisfy the third prong of a prima facie case, plaintiff must put forward some evidence of a causal link between the adverse employment action and the protected activity. <u>Long v. Eastfield College</u>, 88 F.3d 300, 305 n.4 (5th Cir. 1996). The Fifth Circuit has indicated that this process is "highly fact specific" and identified several factors that may be considered in determining whether a causal link has been demonstrated: (1) the employee's past disciplinary record; (2) whether the employer followed its usual disciplinary procedures when taking the adverse action; and (3) the temporal relationship between the protected activity and the adverse action. <u>Nowlin v. Resolution Trust Corp.</u>, 33 F.3d 498, 507-08 (5th Cir. 1994). Close timing alone may be a significant factor, but not necessarily determinative of retaliation. <u>Mayberry v. Vought Aircraft Co.</u>, 55 F.3d 1086, 1092 (5th Cir. 1995).

---

[90] At her deposition, Plaintiff conceded that Article 34, Section 3A of the union contract stated, "Employees may be required to furnish reasonably acceptable evidence to substantiate a request for approval of sick leave that exceeds three consecutive workdays." DMSJ, Ex. 8, Deposition of Donna Arensdorf, pp. 112-13.

36

In the present case, Plaintiff cites the close proximity of time between her June 2004 complaint of discrimination and her unfavorable annual performance evaluation in July 2004 as evidence of a causal connection.   However, the undisputed facts also demonstrate that Gibson had found Plaintiff's job performance to be below satisfactory in many categories beginning in November 2003 and had warned Plaintiff, in writing, that she would be placed on a PIP if her performance did not improve.   Additionally, there is nothing in the record that suggests proper procedures were not followed; in fact, Plaintiff conceded that she was not eligible for the Flexiplace program with an unsatisfactory evaluation.[91]   Even if the court were to accept Plaintiff's criticisms of the evaluation process as subjective, there is no denying the fact that Plaintiff received three negative performance evaluations and warnings of the consequences of continued poor performance, prior to her engaging in a protected activity.   Under the circumstances, the facts do not support the inference of a causal connection between the protected activity and the adverse employment actions and Plaintiff's prima facie case of retaliation fails.

Assuming for the sake of argument that Plaintiff's evidence satisfied a prima facie case of retaliation, Defendant has met its burden of proving that its actions were legitimate and

---

[91]     DMSJ, Ex. 23, Deposition of Donna Arensdorf, pp. 28, 30; P. Response, Ex. 15, Evidentiary Hearing, p. 169.

nonretaliatory.   The summary judgment evidence established that Plaintiff received detailed criticisms of her work performance in November 2003, February 2004, June 2004, and July 2004, both orally and in writing.   Defendant's policies required that she be removed from the Flexiplace program and placed on a PIP after receiving an unsatisfactory performance evaluation.   Accordingly, the court finds that Defendant has articulated legitimate, nonretaliatory reasons for the poor annual performance evaluation, removal from the Flexiplace program and placement on a PIP.

As stated above, Plaintiff's ultimate burden of proving retaliation is showing that "but for" the protected activity, Defendant would not have taken the adverse action.   Septimus, 399 F.3d at 608.   In other words, Plaintiff must produce evidence that would allow a jury to conclude that "but for" the discriminatory purpose, she would not have received the poor performance evaluation in July 2004.

However, Plaintiff has not submitted any evidence, other than her own conclusory opinions and inadmissible speculation, that raises a material issue of fact that Defendant's actions were a pretext for retaliation.   In her deposition, Plaintiff admitted that she has disagreed with every one of her managers' interpretations of performance standards over the past sixteen years.   She also agreed that each of her managers had "pretty much" interpreted the regulations the same way, undercutting her argument

38

that Gibson's July 2004 evaluation was manipulated to retaliate against her for the protected activity.[92]  She also testified that, under her interpretation of the personnel regulations, she should have been given an opportunity letter and placed on a PIP in November 2003, after her first negative performance assessment.[93]  This testimony undermines her argument that she was placed on a PIP in retaliation for her June 2004 complaint of discrimination.

In sum, all that Plaintiff posits in support of her pretext burden is her opinion that Gibson's evaluation was subjective and retaliatory.  This is simply not enough to raise a triable issue of fact that, "but for" the protected activity, she would not have received the poor evaluation in July 2004 and been placed on the PIP.

## V.  Conclusion

Based on the foregoing, Defendant's Motion for Summary Judgment is **GRANTED** in all respects.

SIGNED in Houston, Texas, this 13th day of November, 2006.

Nancy K. Johnson
United States Magistrate Judge

---

[92]     DMSJ, Ex. 23, Deposition of Donna Arensdorf, p. 40.

[93]     DMSJ, Ex. 23, Plaintiff's Deposition, pp. 151-53.